JUSTICE BAKER,
dissenting.
¶33 I would reverse the termination of Father’s parental rights on the record before the Court. The Department’s termination request focused on Father’s failure to comply with his treatment plan pursuant to § 41-3-609(l)(f), MCA, and the Department failed to meet its burden of proof under that statute.
¶34 I do not take issue with the Court’s analysis of the law. In particular, I agree that whether the treatment plan was appropriate is not properly before us in this appeal and that, under our precedent, the District Court could not conclude that Father’s treatment plan was unsuccessful by virtue of his incarceration status alone, when that status “was known and considered by the Department when formulating the plan.” Opinion, ¶ 20.
¶35 “The Department has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been satisfied.” In re K.L., 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691. As the Court observes, the Department sought termination primarily under § 41-3-609(1)(f), MCA. The District Court’s single finding addressing § 41-3-609(1)(f)(i), MCA, stated that “Father did not successfully complete his treatment plan because he has been incarcerated since the inception of this case and was not released from his incarceration so that he could parent [J.B.], Jr.” But Father’s treatment plan did not require that he be released from incarceration. The Phase I plan contemplated that Father would remain incarcerated throughout that Plan’s duration.
*58 ¶36 The Department offered no evidence at the termination hearing that Father had not complied with the tasks set forth in the treatment plan. Child Protection Specialist Amanda Graziano was the State’s only witness who testified regarding Father’s compliance with his treatment plan. Graziano testified extensively about Mother’s failure to complete her treatment plan, including Mother’s chemical dependency issues, substance abuse, use of illicit drugs, and inability to obtain adequate housing for herself. In contrast, when asked whether Father had met the goals and addressed the Department’s concerns through his treatment plan, Graziano’s only explanation was that Father “was not able to follow through” because he had been incarcerated “for the duration of the case.” On cross-examination, Graziano admitted that Father had been present at all hearings throughout the case and that the Department had been made aware of Father’s status with the Department of Corrections (DOC) throughout the proceedings.
¶37 Father testified that during his incarceration he had completed one group therapy program and was in the process of completing two other group therapy programs. He also testified that he had not had any disciplinary issues while incarcerated with the DOC. Father explained that he was signed up to go to Connections Corrections and believed that after completing that program he would be able to be a better parent for his son. Father stated that when he gets to prerelease he intends to take parenting classes and participate in outpatient counseling programs.
¶38 Although Father acknowledged in his testimony that he had acted out during his detention at the Missoula Assessment and Sanctions Center (MASC) while awaiting DOC placement, he had since been admitted to the Sanction Treatment Assessment Revocation and Transition (START) program and was in full compliance with all conditions of his confinement. His case manager, Patrick McGee, testified that Father had been “very compliant” and “positive” during his time at START and that Father had completed “whatever is necessary,” including participating in mental health and chemical dependency counseling. McGee also testified that Father was administratively transferred out of the boot camp program because it “was not a good fit for him,” and that Father had not had any disciplinary problems during his incarceration with the DOC. The Department offered no evidence that Father had any disciplinary infractions throughout his incarceration — including the incidents that Father acknowledged — and the District Court did not premise its decision on Father’s “disruptive behavior” while at MASC.
*59 ¶39 The Department also presented no evidence that Father’s incarceration was expected to be long-term. There are many parents who serve time in prison without losing all rights to their children. Further, although the Department presented evidence regarding the prior termination of Father’s rights to another child, it did not seek to forego the requirements of a treatment plan by filing its petition under § 41-3-609(4)(a) or (c), MCA. See A.T., ¶ 24. The Court does not rely on the prior termination or long-term incarceration in affirming the District Court. Rather, the Court essentially concludes that Father’s rights as a parent may be terminated because — despite the lack of any affirmative evidence from the Department — he acknowledged acting out while at the detention center and failing to follow an order. Opinion, ¶ 25. That is an awfully thin reed, and one the District Court did not even mention in its findings of fact. Rather, as noted, the court relied exclusively on Father’s incarceration to determine that he had not complied with his treatment plan. The Department well may have adequate grounds for termination in this case, particularly given Father’s history and the prior termination of his parental rights to another child. It is perhaps the unlikelihood of Father’s ultimate success that influences the Court’s decision today. But the requirements of the law must be met, and the ruling has implications beyond this case. Having invoked § 41-3-609(l)(f), MCA, and given Father a treatment plan, the Department is bound to prove the elements of that statute before asking the court to terminate his rights. I would conclude that the Department failed to meet its burden.